IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

JAMES D. HIBNER

       Plaintiff,

VS.                                                              Civil Action No.
                                                                2:17-cv-02590-JPM-tmp

REGIONS BANK                                                     JURY DEMAND

       Defendant.
_____

**AMENDED COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND TO SET ASIDE FORECLOSURE AND DECLARE FORECLOSURE A NULLITY, AND FOR LEGAL AND EQUITABLE RELIEF**
_____

       COMES NOW your Plaintiff, JAMES D. HIBNER, by and through counsel, and hereby asks this Honorable Court to set aside a foreclosure and award damages to include attorney fees and court costs as well as any further legal and equitable relief to which Plaintiff may be entitled as the Court deems appropriate.  In support thereof, Plaintiff would show the following unto the Court:

       1.  Plaintiff (hereinafter "Hibner") is a resident and citizen of Shelby County, Tennessee and has been so at all relevant times with respect to the allegations herein. He resides at 56 Viking Drive, Cordova, Tennessee 38018.

       2.  Defendant REGIONS BANK (hereinafter "Regions") is, upon information and belief, a corporation and banking entity authorized to do business in the state of Tennessee. Its agent for service of process is: Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee, 37203.

3. Hibner is the rightful owner of real property located at 56 Viking Drive, Cordova, Tennessee 38018 (hereinafter "Home") in that Plaintiff purchased the Home with his wife in 1993 for approximately $245,000.00 evidenced by a Warranty Deed filed with the Shelby County Register of Deeds on March 31, 1993 under instrument number DL0731. The Home may be currently worth as much as $400,000.00.

4. Hibner subsequently obtained a 15-year non-purchase money mortgage with Union Planters Bank on or about September 28, 2004 in the amount of $235,000.00 evidenced by a Promissory Note in the Principal amount of $235,000.00 dated September 28, 2004 (hereinafter "Note"), and a Deed of Trust dated September 28, 2004 and signed October 1, 2004 (hereinafter "Deed"), both with a scheduled maturity date of September 28, 2019. The Deed was filed with the Shelby County Register of Deeds on October 21, 2004 under instrument number 04177171.

5. Defendant Regions wrongfully foreclosed Hibner's Home on May 4, 2017 by failing to comply with the terms of the Deed and/or the Note and by failing to give proper notice either intentionally or negligently. Defendant Regions also has a pending state court action by and through other counsel in Shelby County General Sessions court under docket number 1870055 seeking to evict Hibner.

6. Hibner has been self-employed as the President/Owner/Operator of his own company Hibner Heating & Air Conditioning, Inc. for over 30 years.  At one point the business was thriving with 3 locations, 13 service vans and over 20 employees. Hibner had also been married for 28 years until his wife filed for divorce in 2010.

7. At some point before 2010 Hibner began suffering from a type of severe arthritis called *ankylosing spondylitis* that limited his ability to work.

8. Hibner continued to suffer escalating medical problems related to his arthritis over the next several years. At the same time, he was also going through a bitter divorce.

9. At some point in 2015 the combination of Hibner's arthritis as well as stress from his divorce caused him to reach a point where he decided to hire an independent general manager to conduct the day to day operations of his business.

10. Hibner's bitter contested divorce finally reached a settlement in the summer of 2016.

11. At some point around this same time in 2016 Hibner received a call from his bookkeeper saying that they had no money and would not be able to make payroll.

12. Prior to 2016, Hibner had never missed a single payment to Defendant Regions.

13. Not long after his divorce became final, Hibner became aware that his general manager was not conducting business up to the standards that he had set and that his customers had come to expect after so many years in business.

14. Before Hibner could take appropriate action to rectify the problems with his business he suffered a tragic and catastrophic injury at home which resulted in multiple surgeries and intensive care hospitalization for two months into the fall of 2016 followed by an extensive recovery period that continues to this day.

15. Because of his catastrophic injury, Hibner's business completely fell apart and his income reduced down to only social security for a period of time.

16. As Hibner was recovering in late 2016 and early 2017 he found himself in extreme financial distress and immediately began efforts to obtain some type of loan modification seeking a payment reduction on his mortgage. At that time the balance was less than $70,000 but the monthly payment was $1,919.23 per month and the value of the property at that time may have been as much as $400,000.00.

17. Hibner sought help from Regions on more than one occasion but was repeatedly told by Regions representatives at the branch that he would not qualify for a loan modification, yet Regions never offered or invited Hibner to formally apply.

18. During these interactions with Regions branch personnel, Hibner was never informed that he was in default and at that time he did not believe that he was in default because he thought his payments were being made automatically through an automatic ACH bank draft.

19. The actions of Regions Bank at that time constituted a breach of contract under the terms of the Note by either: (a) Starting foreclosure proceedings when Hibner was not in default; or, (b) If Hibner was in default then Regions' failure to notify Hibner of the extent and nature of the alleged default constituted a breach of contract under the terms of the Note.

20. Hibner knew that he was eventually going to have problems meeting his mortgage obligation, but in fact, at that time, he was unaware that he may have been in default. Defendant Regions knew or should have known about Hibner's medical condition at that time.

21. While Defendant Regions may have owed Plaintiff no duty to make sure he fully understood his situation, the Court should take notice of the specific actions and failures of this Defendant and consider who stood to benefit from those actions and to what extent.

22. Under the terms of the Note and Deed referenced in paragraph 4 (four) of this Amended Complaint, Defendant Regions did have certain responsibilities and obligations that were not fulfilled.

23. The Note referenced in paragraph 4 of this Amended Complaint is problematic for two reasons: (a) the Note is ambiguous in failing to specify the Lender's Notice of Default requirements and (b) the Note does not comply with the Truth in Lending Act requirements of 12 C.F.R. 1026.40 (Reg Z) in that it fails to disclose the cost of credit as a yearly rate (commonly referred to as the "APR" or "Annual Percentage Rate") and it also contains no "total of payments" information.

24. In the section "LENDER'S RIGHTS", the Note reads "Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount" with "I" presumably referring to the Borrower.

25. The language "Lender may declare" implies some type of notice but nowhere in the Note is there a definition of exactly how and in what manner the Lender "may declare" the entire balance due.

26. Since this loan was a non-purchase money loan secured by the Plaintiff's primary residence and it was not for business purpose, the Note should have fully complied with all applicable laws governing this type of loan including but not

limited to the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. 2601, et seq., and the Truth in Lending Act (Regulation Z) 12 C.F.R. 1026.40 which said loan did not do.

27.  Plaintiff is only seeking damages on these counts to the extent that this Defendant may become unjustly enriched through this wrongful foreclosure situation, but the fact is that the Truth in Lending information required for this type of loan was conspicuously absent from the Note.

28.  Because the Note was a document that Regions unilaterally created for universal use with all consumer borrowers and without any consultation or input from Hibner or any borrower, any ambiguity in the Note should be construed in favor of the non-drafting party borrower.

29.  Under the terms of the Deed of Trust and under Tennessee state law, Regions had a duty to mail a copy of the notice of sale on or before the first date of publication pursuant to T.C.A. 35-5-101(e)(1)(A) specifically to the mailing address of the property.

30.  Hibner never received any Notice of sale from Regions and never even received any notice of default prior to the May 4 sale, but after the May 4 sale, Hibner discovered a letter from Regions dated April 4, 2017 that started off with "Please consider this letter an official notice that you are currently in default of your loan. As a result of your default, your loan has been accelerated and the entire loan balance is now due and payable in full.". This mysterious two-page letter was signed by "Sandra Douglas, Regions Bank" with no official title given.

6

31. The April 4, 2017 letter from Sandra Douglas with Defendant Regions Bank was curiously addressed exactly as follows:

> James Hibner
> Rebecca Hibner
> 2095 Exeter Rd, Ste 80319
> Germantown, TN 38138

32. The mere existence of this correspondence suggests that whatever other correspondence there may have been from either Regions or its foreclosure law firm most likely went to the wrong address and if so, this would have violated both Tennessee state law and the terms of the Deed.

33. The April 4 letter from Regions made no mention of any sale date.

34. According to Defendant's Substitute Trustee's Deed filed on May 9, 2017 with the Shelby County Register under Instrument #17046093, the first date of publication was March 29, 2017 yet the only notice ever sent from Regions was dated April 4, 2017 and it was sent to the wrong address.

35. The failure of this notice to be sent on or before March 29, 2017 constitutes an additional breach of contract claim as well as a violation of T.C.A. 35-5-101(e)(1)(A) which says in relevant part that "The notice shall be sent on or before the first date of publication" (T.C.A. 35-5-101(e)(1)(A)).

36. There is a Covenant of Good Faith and Fair Dealing implied between Regions and Plaintiff by virtue of their being mutual parties to the Deed and the Note.

37. By failing to send the Notices to the actual address and also by failing to allow Plaintiff to even apply for a new loan and/or a loan modification on the Home, Regions has breached the Covenant of Good Faith and Fair Dealing.

38. Plaintiff would have and should have qualified for a loan modification even with just his social security income because the outstanding mortgage balance at that time was around $70,000 while Home value exceeded $200,000 and Plaintiff could have made a monthly mortgage payment more commensurate with the outstanding loan balance instead of the regular scheduled monthly payment of over $1,800 per month.

39. Defendant Regions wrongfully foreclosed Hibner's Home because either Hibner was not in default, or if Hibner was in default, Regions failed to give proper notice of default and sale.

40. Defendant Regions' act of selling or attempting to sell Plaintiff's Home under these unusual circumstances constitutes a breach of contract under the terms of the Deed and the Note.

41. Defendant Regions' multiple actions leading to the sale of Plaintiff's Home constitute either an intentional fraud or a negligent misrepresentation and in any event an unfair and deceptive business practice that Regions should not be allowed to benefit from.

42. Plaintiff will suffer immediate and irreparable injury, harm and/or damage if Regions, by and through Jones, is allowed to go forward with any eviction in that his right, title, interest, claim, use and enjoyment to/of the Home will be forever

extinguished, and all financial equity held by Plaintiff in the Home will be at substantial risk of loss.

### WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That Defendant be served with a copy of this Complaint and be required to answer, or suffer a judgment by default;

2. For an Order of the court setting aside the apparent foreclosure that occurred on May 4, 2017 on the property at 56 Viking Drive, Cordova, Tennessee 38018 and restoring Plaintiff to full ownership of the property;

3. For compensatory damages of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) for the wrongful foreclosure of the Plaintiff's real property based on a breach of contract and a breach of the Covenant of Good Faith and Fair Dealing, and in the alternative, both statutory and actual damages for violations of the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. 2601, et seq., and the Truth in Lending Act (Regulation Z) 12 C.F.R. 1026.40;

4. For the right to amend complaint as new information becomes available;

5. For a jury trial;

6. For a temporary restraining order, preliminary injunction, and/or permanent injunction to allow Plaintiff to continue to exercise dominion and control over their real property, for the reasons set out in the allegations above, and that the court either waive the bond requirement for the continued use of the property pending this litigation or else set a reasonable bond requirement for said use;

7. For an award of reasonable attorney's fees and court costs for having to bring this action;

8. For such further and other relief to which the Plaintiff may be entitled.

                               RESPECTFULLY SUBMITTED,

                               /s/ Bo Luxman_____
                               BO LUXMAN, TN BPR #21580
                               Attorney for the Plaintiff
                               Luxman Law Firm
                               44 North Second St., Suite 1004
                               Memphis, Tennessee 38103
                               (901) 526-7770 phone
                               (901) 526-7957 fax
                               Bo@LuxmanLaw.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on October 23, 2017, a true and correct copy of the foregoing document was sent to the following counsel of record by electronic means through the Court's ECF system:

Diana M. Comes
Melody McAnally
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Post Office Box 171443
Memphis, TN  38187-1443
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
melody.mcanally@butlersnow.com
diana.comes@butlersnow.com

*Counsel for Defendant Regions Bank*

/s/  Bo Luxman_____