**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES D. HIBNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02590-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| REGIONS BANK, LAW OFFICE OF | ) | |
| J. PHILLIP JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This is a removed state-court action surrounding the foreclosure of Plaintiff's residence. After Defendant moved to Dismiss the initial complaint, Plaintiff filed an Amended Complaint asserting many causes of action against Regions Bank. (ECF No. 19 at PageID 93–97.) Defendant maintains its Motion to Dismiss and the parties have filed supplemental briefs. (ECF Nos. 12–13, 21–23.) For the following reasons, the Court grants Defendant's Motion.[1]

## **BACKGROUND**

In 2004, Plaintiff secured a mortgage on 56 Viking Drive in Cordova, Tennessee. (ECF No. 19 at PageID 91.) By all accounts, Plaintiff faithfully made his mortgage payments

---

[1] Plaintiff's Amended Complaint did not list, nor assess claims against, Defendant Law Office of J. Phillip Jones. The Clerk of Court, in his discretion, terminated Defendant Law Office from this action. Thus, in the interest of certainty, the Court dismisses Defendant Law Office from this action without prejudice and treats this action as one against a single defendant.

until 2016 when, because of a series of personal, professional, and physical events, Plaintiff's financial situation became distressed. (*Id*.)

The parties dispute when, and if, many events occurred. But those disputes do not affect this motion because both parties agree on the central issue—that, at some point, Defendant started a foreclosure proceeding on 56 Viking Drive. (ECF No. 19 at PageID 93); (ECF No. 21-3 at PageID 121–22.)

According to Plaintiff, "in late 2016 and early 2017 [Plaintiff] found himself in extreme financial distress and immediately began efforts to obtain some type of loan modification seeking a payment reduction on his mortgage." (ECF No. 19 at PageID 93.) He asserts that he sought a loan modification from Defendant "but was repeatedly told by [Defendant's] representatives . . . that he would not qualify for a loan modification." (*Id*.) Plaintiff also asserts that he "knew that he was eventually going to have problems meeting his mortgage obligation, but in fact, [when applying for the modification], he was unaware that he may have been in default." (*Id*.)

Both parties agree that 56 Viking Drive's foreclosure sale was set to take place on May 4, 2017. (ECF No. 19 at PageID 95); (ECF No. 21-3 at PageID 121–22.) But Plaintiff asserts that he "never received any Notice of sale from [Defendant] and never even received any notice of default prior to the May 4 sale . . . ." (ECF No. 19 at PageID 95.) In sum, Plaintiff asserts that Defendant "wrongfully foreclosed on [Plaintiff's] Home because either [Plaintiff] was not in default, or if [Plaintiff] was in default, [Defendant] failed to give proper notice of default and sale." (Id. at PageID 97.)

Defendant, on the other hand, disputes Plaintiff's account of the events leading up to the foreclosure proceeding. According to Defendant, Plaintiff began defaulting on his

mortgage payments in early 2016, and stopped making payments of any kind after May 9, 2016.  (ECF No. 21 at PageID 108); (ECF No. 23-1 at PageID 154–56.)  And Defendant asserts that it notified Plaintiff that he was in default months before it began its foreclosure proceeding on 56 Viking Drive and that when it began the foreclosure proceeding, it did so according to the Deed of Trust's terms.  (ECF No. 21–21-1 at PageID 108–09, 111–13, 119, 121); (ECF No. 23 at PageID 136–40.)  Besides, when it began the foreclosure proceedings, Defendant asserts it properly notified Plaintiff of the foreclosure sale under these same terms. (ECF No. 21–21-1 at PageID 108–09, 111–13, 119, 121); (ECF No. 23 at PageID 136–40.)

### A. Plaintiff's Complaint and Amended Complaint.

Plaintiff's initial Complaint sought both damages and cessation of Defendant's foreclosure proceedings.  Plaintiff alleged that Defendant (1) breached the covenant of good faith and fair dealing and (2) wrongfully foreclosed on 56 Viking Drive violating the Tennessee Consumer Protection Act ("TCPA").  (ECF No. 1 at PageID 1–11); *see* Tenn. Code Ann. § 47-18-101 (2018).

After Defendant's Motion to Dismiss, Plaintiff filed an Amended Complaint, asserting these claims—(1) violation of the Truth in Lending Act ("TILA") and its implementing regulation, Regulation Z, 12 C.F.R. § 1026.40, (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* (3) breach of contract stemming from (a) Defendant starting foreclosure proceedings when Plaintiff was not in default, (b) Defendant failing to give him proper notice of the impending foreclosure proceedings, (c) the mortgage's failure to specify what, exactly, constituted a default, (d) fraud or misrepresentation about Defendant's initiation of foreclosure proceedings, and (4) failure to

give proper notice of the foreclosure sale in violation of Tennessee law.  (ECF No. 19 at PageID 93–97.)

**B. Defendant's Motion to Dismiss.**

Defendant moved to Dismiss Plaintiff's Complaint, arguing the following—(1) Plaintiff's TILA and RESPA claims were barred by the applicable statutes of limitations, (2) Plaintiff failed to satisfy Rule 8(a) for breach of contract under any applicable theory, (3) Plaintiff failed to satisfy Rule 9(b) for his negligent and fraudulent misrepresentation claims, and (4) Plaintiff was not entitled to injunctive relief for the foreclosure proceeding.  (ECF No. 21 at PageID 104.)

## STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In practice, Rule 8 requires that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

A court will grant a motion to dismiss if a plaintiff has no plausible claim for relief. But a court must review the complaint in a light most favorable to the plaintiff.  *See Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015).  "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Id*. (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

Although Plaintiff's claims must generally satisfy Rule 8, Plaintiff's fraud claims must satisfy Rules 9's heightened pleading standards. According to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At minimum . . . [a party must] allege the time, place and contents of the misrepresentations . . . ." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982 (6th Cir. 2017) (internal quotations omitted). In other words, "[g]eneralized and conclusory allegations do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (citations omitted).

## DISCUSSION

Defendant attacks Plaintiff's Amended Complaint with four arguments. The Court takes each of these arguments in turn.

### A. Plaintiff's TILA and RESPA Claims are Barred by the Applicable Statutes of Limitations, as Are Portions of His Breach of Contract Claims.

### 1. TILA.

A party has one year after a loan's consummation to seek damages under TILA. *See* 15 U.S.C. § 1640(e); *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1109 (6th Cir. 2012). And a plaintiff has three years after a loan's consummation to seek rescission under TILA. *See* 15 U.S.C. § 1635(f); *Chapman v. JPMorgan Chase Bank, N.A.*, 651 F. App'x 508, 512 (6th Cir. 2016). But an exception to § 1640(e)'s one-year statute of limitations exists under § 1640(k)(1). *See* 15 U.S.C. § 1640(k)(1). Under § 1640(k)(1), when a "creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure [action] of [a] residential mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a [TILA] violation . . . **as a matter of defense** . . . without regard for the time limit on a private action" under TILA. § 1640(k)(1) (emphasis added).

Here, Plaintiff's TILA claim is barred under the applicable statutes of limitations regardless of the relief sought. Plaintiff's TILA claim stems from a 2004 mortgage. (ECF No. 1-1 at PageID 8.) He thus had until either 2005 or 2007 to file his TILA claim. *See* § 1640(e); § 1635(f). Because Plaintiff did not file his claim until 2017, it is barred by the applicable statutes of limitations. (ECF No. 1 at PageID 1.)

Furthermore, Plaintiff's TILA claim is not, in any way, salvaged by 15 U.S.C. § 1640(k)(1). This exception applies only to TILA claims raised "as a matter of defense" in response to the foreclosure proceedings. 15 U.S.C. § 1640(k)(1). The law in this Circuit is clear that § 1640(k)(1) has no applicability when a borrower sues a lender under TILA. *See Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 955–56 (6th Cir. 2014) ("The problem with [Plaintiffs' TILA claims] is that they are not raising TILA violations 'as a matter of defense,' on the contrary, they brought this suit—an affirmative action—seeking damages and other relief . . . . [Thus,] the one-year statute of limitations applies to 'offensive' TILA claims like this one . . . .") (quoting § 1640(k)(1)). Thus, Plaintiff raises no grounds to get around TILA's applicable statutes of limitations. His TILA claim must fail as a result.

## 2. RESPA.

Plaintiff does not reveal what specific provision of RESPA he is suing under. (ECF No. 19 at PageID 94–95.) In any event RESPA claims are subject to either a one-year or a three-year statute of limitations. *See* 12 U.S.C. § 2614; *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 (6th Cir. 2009). These periods begin to run "from the date of the occurrence of the violation." *See* § 2614.

Plaintiff's RESPA claim stems from the formation of the mortgage itself. (ECF No. 19 at PageID 94) (arguing that "the Note should have fully complied with all applicable laws

governing this type of loan . . . .").  Thus, statute-of-limitations clock began to run on

Plaintiff's RESPA claim in 2004, the time of the mortgage's formation.  (ECF No. 19 at

PageID 91); (ECF No. 13 at PageID 45.)

Plaintiff asserts no particular section of RESPA that Defendant allegedly violated.

Typically, this failure would require Plaintiff to file a more definite statement on his RESPA

claim.  But here the issue is moot because Plaintiff's RESPA claim is barred under the

applicable statute of limitations regardless of section.  RESPA's longest statute of limitations

is three years.  *See* 12 U.S.C. § 2614.  Plaintiff filed his initial Complaint in 2017—thirteen

years after the alleged violation (i.e., the mortgage's formation).  (ECF No. 1 at PageID 1);

(ECF No. 21 at PageID 107.)  Thus, Plaintiff's RESPA claim must be dismissed.

### 3. Breach of Contract Claims Occurring Before 2011.

Defendant argues that Plaintiff's breach-of-contract claims should be barred under the

applicable statute of limitations.  (ECF No. 21 at PageID 111.)  Tennessee law has a six-year

statute of limitations for breach-of-contract actions.  *See* Tenn. Code Ann. § 28-3-109(a)(3)

2018); *Armstrong v. Symetra Life Ins. Co.*, No. 3:08-0974, 2010 WL 1426727, at *6 (M.D.

Tenn. Apr. 8, 2010).  Thus, any alleged breaches occurring before August 7, 2011—six years

before Plaintiff filed his initial Complaint—are barred.

This means that one of Plaintiff's claims is barred under the applicable statute of

limitations—Plaintiff's breach-of-contract claim that the mortgage and Promissory Note were

ambiguous in that they failed to specify what, exactly, constituted a default.  (ECF No. 19 at

PageID 94–95.)  This breach of contract claim targets structural errors in the pertinent

mortgage documents.  Those errors—assuming that there were such errors—occurred at the

time of formation. Because the time of formation was 2004, that claim is barred. *See* § 28-3-109(a)(3); (ECF No. 19 at PageID 91.)

## B. Plaintiff's Fraud Claims Either Fail as a Matter of Law or Fail to Plead with Sufficient Particularity under Rule 9(b).

Plaintiff's initial Complaint asserted a wrongful foreclosure claim under the TCPA related to Defendant's attempt to sell 56 Viking Drive using allegedly unfair or deceptive trade practices. (ECF No. 1-1 at PageID 11.) Though not explicitly mentioned in Plaintiff's Amended Complaint, to the extent Plaintiff's Amended Complaint asserts any claims for wrongful foreclosure under the TCPA, they are barred. (ECF No. 19 at PageID 91, 97.) The Court agrees with the holdings in cases from the Western District of Tennessee that plaintiffs cannot bring wrongful foreclosure claims under the TCPA. *See Pugh v. Bank of Am.*, No. 2:13-cv-02020-SHM-cgc, 2013 WL 3349649, at *8 (W.D. Tenn. July 2, 2013) ("[T]he weight of authority prohibits a claim for wrongful foreclosure under the TCPA."); *Porter v. GMAC Mortg., LLC*, No. 2:10-02858-cv-SHM-dkv, 2011 WL 13116675, at *5 (W.D. Tenn. Sept. 9, 2011) ("The TCPA does not apply to claims against a mortgage holder arising from a foreclosure.").

The remaining, though nebulous, fraud allegations fail under Rule 9(b). Plaintiff's Amended Complaint asserts fraud claims in vague terms. It asserts that Defendant intentionally engaged in a wrongful foreclosure of 56 Viking Drive. (ECF No. 19 at PageID 91.) It asserts that Defendant's "multiple actions leading to the sale of Plaintiff's Home constitute[s] either an intentional fraud or a negligent misrepresentation and in any event [is] an unfair and deceptive business practice." (*Id*. at PageID 97.) These assertions, even if they attempt to allege fraud, are conclusory. They do not get close to the factual specificity required to satisfy Rule 9(b). "At minimum . . . [a party must] allege the time, place and

contents of the misrepresentations . . . ." *William Beaumont Hosp. Sys.*, 677 F. App'x at 982

(internal quotations omitted).  "Generalized and conclusory allegations do not satisfy Rule

9(b)."  *Bovee*, 272 F.3d at 361 (citations omitted).  Thus, Plaintiff's fraud allegations must

necessarily fail under Rule 9(b).

### C.  Plaintiff's Remaining Breach of Contract Claims Fail Rule 8's Pleading Requirements.

Plaintiff's remaining breach of contract claims are that Defendant (1) started

foreclosure proceedings when Plaintiff was not in default and (2) failed to give him proper

notice of the impending foreclosure proceedings.  (ECF No. 19 at PageID 93–97.)  Plaintiff

also asserted a breach of Defendant's covenant of good faith and fair dealing on top of its

other breach-of-contract claims.  (*Id*. at PageID 96–97.)

As noted previously, "[a] complaint should only be dismissed if it is clear to the court

that 'no relief could be granted under any set of facts that could be proved consistent with the

allegations.'"  *See Herhold*, 608 F. App'x at 331 (quoting *Trzebuckowski*, 319 F.3d at 855.

"As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6)

motion to dismiss unless the motion is converted to one for summary judgment under [Rule]

56."  *In re Fair Fin. Co.*, 834 F.3d 651, 656 n. 1 (6th Cir. 2016) (quoting *Jackson v. City of

Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

But "when a document is referred to in the pleadings and is integral to the claims, it

may be considered without converting a motion to dismiss into one for summary judgment."

*Id*. (quoting *Comm. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir.

2007).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss

simply by failing to attach a dispositive document upon which it relied."  *Weiner v. Klais and

Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506 (2002). For example, if a plaintiff buys a watch from a defendant on eBay, and then sues the defendant for failing to deliver the watch to her, the defendant can introduce evidence showing that she did, in fact, deliver the watch. *See id.* ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441–42 (6th Cir. 2012).

Here, the question is thus—should the Court consider documents that Defendant supplemented to its Motion to Dismiss when reviewing these two claims without converting Defendant's Motion to one for summary judgment? The Court may. The Court finds *Peoples v. Bank of America* instructive on this issue. *See Peoples v. Bank of Am.*, No. 2:11-cv-02863-STA-cgc, 2012 WL 601777 (W.D. Tenn. Feb. 22, 2012).

*Peoples* also concerned a motion to dismiss in a foreclosure action when the plaintiff owner alleged, among other claims, that the defendant bank failed to notify the plaintiff of the estate's foreclosure. *See Peoples*, 2012 WL 601777, at *1. In reviewing the motion to dismiss, the *Peoples* Court stated that:

> Both parties have submitted exhibits and documents that were not attached to Plaintiff's original state court Complaint. Defendants have attached to their Motion to Dismiss a copy of the Deed of Trust as well as a notice of the trustee's sale and proof of publication. . . . The Court finds that the documents submitted with Defendant's Motion to Dismiss are properly considered part of the pleadings because they are referred to in the Complaint and are central to the claims. It is clear that the Complaint refers extensively to the Deed of Trust and as a result that document is central to Plaintiff's claims for breach of contract. Likewise, Plaintiff has alleged that he did not receive proper notice of the foreclosure and that the notice Defendant did give violated the terms of the deed of trust. Based on this allegation, the Court finds that Defendant's notice, including proof of publication, is referred to in the pleadings and central to Plaintiff's claim of improper notice. Thus, the

documents attached to Defendant's Motion to Dismiss are properly part of the pleadings, and the Court will consider them without converting the instant Motion to a motion for summary judgment.

*Id*. at *3.

Defendant's Motion to Dismiss and supporting documents all attached several documents related to Plaintiff's claim. For example, Defendant's attached documents include the Promissory Note, the Deed of Trust, the Warranty Deed, letters notifying Plaintiff that his mortgage payments were past due, a copy of a loan modification application with Plaintiff's alleged signature on it, letters notifying Plaintiff that Defendant would sell 56 Viking Drive in a foreclosure sale, and Defendant's account records for Plaintiff's mortgage. (ECF No. 13-1–13-4 at PageID 53–77); (ECF No. 21-1 at PageID 118–25); (ECF No. 23-1 at PageID 142–63.)

The Court may consider these documents without converting Defendant's Motion to one for summary judgment. The above documents directly concern Plaintiff's claims that Defendant (1) started foreclosure proceedings when Plaintiff was not in default and (2) failed to notify him properly of the impending foreclosure proceedings. (ECF No. 19 at PageID 93–97.) The documents mentioned above are very similar to those discussed in *Peoples* because they are referred to, either directly or indirectly, in Plaintiff's Amended Complaint and are central to whether Plaintiff's above breach-of-contract claims satisfy Rule 8.[2] *See Peoples*, 2012 WL 601777, at *3; (ECF No. 19 at PageID 91–98.)

1. **In Light of Defendant's Attached Documents, Plaintiff's Two Remaining Breach-of-Contract Claims Fail Under Rule 8.**

_____

[2] Defendant's account records are an exhibit attached to a declaration attesting to the records' authenticity. (ECF No. 23-1 at PageID 142–44.) The Court considers the records only in its review of Plaintiff's two remaining breach-of-contract claims, considering the declaration only for the records' origin and authenticity.

According to the Deed of Trust, Plaintiff "will be in default . . . [if he] fails to make any payment when due under the Indebtedness." (ECF No. 13-2 at PageID 59.) And here Defendant sent Plaintiff a letter on October 12, 2016. (ECF No. 118–19.) In this letter, Defendant notified Plaintiff that if he failed to pay off his mortgage's outstanding balance by November 11, 2016 then Defendant would accelerate the mortgage's total debt and proceed with foreclosure. (*Id.*)

The Deed of Trust allows Defendant to begin foreclosure proceedings "after giving notice of the time, place and terms of such sale . . . ." (ECF No. 13-2 at PageID 60.) Furthermore, the Deed of Trust states that

> Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.

(*Id.* at PageID 61.)

According to Defendant's account records for Plaintiff's mortgage, Plaintiff's last mortgage payment occurred on May 9, 2016. (ECF No. 23-1 at PageID 155.) Defendant then notified Plaintiff that, if he failed to pay his outstanding balance by November 11, 2016 then Defendant would accelerate his mortgage's remaining balance. (ECF No. 21-1 at PageID 118–19.) Plaintiff did not pay off his outstanding balance by November 11, 2016, making no further payments after May 9, 2016. (ECF No. 23-1 at PageID 155.) Defendant then began foreclosure proceedings on March 28, 2017, as it had a right to do under the Deed of Trust. (ECF No. 13-2 at PageID 60); (ECF No. 21-3 at PageID 121–22.) Thus, Plaintiff was in

default when Defendant started foreclosure proceedings on March 28, 2017—the date that Defendant mailed Plaintiff a letter notifying him of the pending foreclosure sale.

Plaintiff, further, argues that Defendant failed to properly notify him of the impending foreclosure sale. (ECF No. 19 at Page 95–96.) It is permissible under the Deed of Trust to send notice of an impending foreclosure through certified mail. That notice is effective when deposited in the mail to the addresses listed on the Deed of Trust. (ECF No. 13-2 at PageID 61.) Defendant did just that. It sent Plaintiff a letter notifying him of the impending foreclosure sale on March 28, 2017, through certified mail, to the address listed at the beginning of the Deed of Trust. (ECF No. 13-2 at PageID 56, 121, 123.)[3]

It appears then, that Plaintiff's above breach-of-contract claims have no ground on which to stand. Plaintiff was in default when Defendant began foreclosure proceedings and Defendant followed the proper procedures to notify Plaintiff of the impending foreclosure sale. Thus, the Court dismisses these two breach-of-contract claims.

Furthermore, "a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element of circumstance of . . . breaches of contracts." *Id*. (quoting *Golf Sci. Consultants, Inc. v. Cheng*, No. 3:07-CV-152, 2009 WL

---

[3] To note, the Court exerted considerable energy making sense of the claims that Plaintiff asserted in his Amended Complaint. For example, Plaintiff postulates that Defendant failed to properly notify Plaintiff of his default and the upcoming foreclosure sale because Plaintiff allegedly received notice only after the sale occurred. (ECF No. 19 at PageID 95–96.) This, Plaintiff argues, violated the Deed of Trust's terms. (*Id*. at PageID 96.) But what term is Plaintiff referring to? How does a failure to discover equate to a failure to notify? It is not evident based on Plaintiff's Amended Complaint. The Court is thus left doing most of Plaintiff's legwork—trying to discern what claim Plaintiff intends to assert and then going through the Deed of Trust itself to analyze the potential claim's merits. The Court is not in the business of dismissing claims on pure technicalities. But the Court is also not Plaintiff's counsel. It is ultimately Plaintiff's responsibility to provide the Court with enough law and facts to move Plaintiff's claim past the motion-to-dismiss stage.

1256664, at *6 (E.D. Tenn. 2009)); *see Caldwell v. JPMorgan Chase Bank, N.A.*, No. 2:14-cv-02204-JTF-cgc, 2016 WL 10592261, at *4 (W.D. Tenn. 2016).  Plaintiff, having no breach-of-contract claims left, cannot sustain his claim for a breach of the implied covenant of good faith and fair dealing.  Thus, to the extent that the Court should act at all on this claim, the Court dismisses it.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss, WITH PREJUDICE.  Furthermore, Plaintiff's Amended Complaint requests a "temporary restraining order, preliminary injunction, and/or permanent injunction to allow Plaintiff to continue to exercise dominion and control over" 56 Viking Drive.  (ECF No. 19 at 98.)  Each of these requests are not sufficiently pleaded to justify the Court granting such drastic relief.  The Court thus DENIES Plaintiff's requests for a temporary restraining order, preliminary injunction, and permanent injunction.

Lastly, in line with the Clerk of Court's termination of the Defendant Law Office of J. Phillip Jones, the Court DISMISSES Defendant Law Office WITH PREJUDICE.

**SO ORDERED**, this 24th day of July, 2018.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE